## M. STODDART AND OTHERS V. T. H. MCMAHAN.

1. A writ of attachment need not be more specific or descriptive than the form prescribed by the statute.

2. Important distinctions are taken in this case between original attachments on which the jurisdiction depends, on the one hand, and mere auxiliary attachments on the other, with respect to the certainty necessary in the sheriff's return of a levy.

3. In support of a sheriff's return of the levy of a mere auxiliary attachment on which no question of jurisdiction is dependent, courts should indulge presumptions which are not admissible in favor of original attachments upon which the jurisdiction is dependent. The cases of Meuley v. Zeigler, 23 Texas, 88, and Tiffany v. Glover, 3 Iowa, 387, overruled in so far as they ignore this distinction.

4. Against a defendant already in court by personal service of citation, an auxiliary attachment was sued out, and the sheriff's return of the same was in part as follows: "Received this writ May 18,˙1869, and executed the same May 24, 1869, by attaching lots number three and four in block four hundred and ninety-eight.   *   *   *   The aforesaid property was pointed out to me by the plaintiff's attorney as the property of" the defendant. It is objected that this return does not state that the attached property was the property of the defendant. *Held*, that as this writ is only auxiliary process, the return is sufficient; but had it been the original process, and the jurisdiction dependent upon it, such a return would not suffice.

5. In a suit on notes against S. and two others as partners, S. denied his partnership, and the plaintiff, to sustain his side of the issue, proved that shortly before the execution of the notes, articles of partnership were executed by all of the defendants, and that they recited that S. contributed $15,000 to the capital, and was to be entitled to one-half or one-third of the net proceeds of the business.   And as further proof, plaintiff introduced a deed made by S., conveying to a trustee all his "interest in and to the partnership business and assets" of the firm, to secure plaintiff against a suretyship liability. And thereupon S. proposed to prove by a witness, that he, the witness, as a mutual friend of S. and the plaintiff, received the trust deed from S., to carry it to plaintiff, and on receiving it from S. the latter explained that his "interest" was an indebtedness of $15,000 due him by the firm.   Plaintiff objected, and the testimony was excluded. *Held*, that such testimony was irrelevant, and the ruling was right.

---

---

·6. On the issue of partnership, S. further proposed to prove, that after the execution of the articles of partnership, two of the defendants stated that the partnership was abandoned. *Held*, that this was not admissible to controvert the written evidence of the partnership and the proved recognition of it by S. long after the execution of the articles.

·7. Real estate being attached, the defendant's wife intervened, claiming part of it as the homestead, and praying damages on account of its seizure under the attachment. Her intervention was dismissed on plaintiff's exception to it, but after judgment in his favor, he released his attachment as to the part claimed to be the homestead. *Held*, that it was error to dismiss the intervention; and though this error was cured in part by the plaintiff's release, yet it was not cured in respect of the claim for damages, and the judgment is so far reversed as to award her a trial below upon that issue.

ERROR from Galveston. Tried below before the Hon. G. E. Mann.

McMahan brought this action on the eighteenth of May, 1869, against M. Stoddart, E. A. Burk and Robert B. Stapp, as partners trading under the style of Stoddart & Burk. The cause of action was a promissory note for $3271.67, executed by Stoddart & Burk to the plaintiff on the twenty-first of April, 1868, and due on July 1, 1868. The petition was sworn to, and contained allegations of a fraudulent transfer by the defendants and a prayer for attachments as well as citations. No service was obtained on Burk, and the suit was dismissed as to him.

The principal questions on which the case is disposed ·of by this court arise upon the return made by the .sheriff upon the attachment. The levy was made on some ten lots in the city of Galveston, and in the opinion of the court will be found so much of the return as .affects the questions raised and adjudged.

The writ of attachment was in the general phrase-·ology prescribed in Article 163, Paschal's Digest. The .defendant Stapp moved the court below to quash the ·writ, because it did not set out the ground or causes

for which it was sued out, nor recite that bond had been given as required by law; and also because the petition did not contain certain averments of ownership, etc., assumed by the pleader to be necessary.

Defendant Stapp also moved to quash the levy of the attachment, because it did not appear that there was not partnership property of the firm to satisfy the writ, nor did it appear that defendant Stapp was personally a participant in the fraud charged in the petition; and, further, because the levy purported to be on property of Robert E. Stapp, when there was no such party defendant. (Stapp's given name being Robert B.)

Both of these motions to quash were overruled by the court; and this ruling comprises the first and second of the errors assigned.

On the twenty-second of May, 1869, McMahan commenced a second suit against the same defendants, on a note for $3320.80, executed to him by Stoddard & Burk on June 4, 1868, and due on the first of August next thereafter. No attachment was sued out in this case, but it was consolidated with the first one, and both proceeded to trial as one cause.

The defendant Stapp by answer denied that he was a partner in the firm of Stoddart & Burk, and by agreement the answer was taken as under oath.

On the sixteenth of December, 1870, Mrs. Lydia J. Stapp, wife of defendant Robert B. Stapp, filed her intervention, alleging that at and long before the levy of the attachment, two of the lots attached were the homestead of the family, and exempt from seizure or forced sale; that plaintiff well knew these facts; that intervenor was damaged one thousand dollars, and in conjunction with her husband now demanded judgment for that amount against the plaintiff.

The plaintiff excepted to the intervention, on the

general allegation that it was not admissible in the cause. This was sustained by the court; the intervention was stricken out, and Mrs. Stapp excepted. She joined her husband in the writ of error, and the ruling on the intervention is one of the errors assigned.

The cause came to trial at the December Term, 1870. A jury was waived, and the whole case was submitted to the court upon an agreed state of facts, by which the bills of exception and such evidence as was excluded became part of the record.

Part of the evidence thus submitted for the plaintiff was an indenture made on the first of February, 1868, by the defendant R. B. Stapp of the first part, W. P. Ballinger of the second part, and plaintiff McMahan of the third part. By the terms of this instrument, Stapp conveyed to Ballinger "all and every interest, of whatsoever description, which said party of the first part has in and to the partnership business and assets of every description belonging to or connected in the mercantile house" of Stoddart & Burk; and in another part, upon certain events, empowered Ballinger to sell and convey "the interest" of Stapp "in and to the partnership assets of said house of Stoddart & Burk;" and elsewhere specially provided that Ballinger should have the "legal control, as trustee, of said interest in the house of Stoddart & Burk; but it is understood that he is not to take actual management, but the same is to remain in the possession and management of Stoddart & Burk," until Ballinger should be notified by Stapp or McMahan to take actual possession and management of the same. The purpose and the trusts of the conveyance were to indemnify McMahan against a suretyship liability.

Plaintiff had notified defendant Stapp to produce articles of partnership between him and Stoddart &

Burk; and the agreed statement of facts recites that in consequence of their non-production, plaintiff "proved by oral testimony that the defendant Stapp, and Stoddart & Burk, made and executed written articles of copartnership, bearing date February 1, 1867; the capital invested by the defendant Stapp being, as recited in the articles, $15,000, said defendant Stapp having either one-third or one-half of the net proceeds of the partnership assets. That about the month of February or March, 1868, the said defendant Stapp spoke of his losses by the partnership venture, and expressed his intention of putting into the concern $10,000 additional capital. The witness' impression is that the articles expired by their terms in February, 1868."

The agreed statement admitted that "the notes sued on were executed for debts contracted by the firm of Stoddart & Burk, in their regular business, during the months of October, November and December, 1867, being for money actually paid by plaintiff, as a banker, on the checks of Stoddart & Burk."

In behalf of the defendant Stapp, the agreed facts admitted his tender and the exclusion of the testimony of M. W. Thomas, that "the articles of copartnership, shown by the plaintiff to exist, were read to General Milton Stapp, the father of the defendant Stapp, and that at the time of reading them, E. A. Burk, a member of the firm of Stoddart & Burk, was present, and that the defendants, Stapp and Burk, both told General Milton Stapp that they had agreed to enter upon the copartnership proposed in the articles, provided the scheme met with his approbation. That General Milton Stapp opposed the plan violently, because his son, being a collector of internal revenue, was expressly prohibited by law from being engaged in the liquor business,

which was that carried on by Stoddart & Burk; and that immediately the proposed scheme was abandoned by Stapp & Burk."

And further in behalf of defendant Stapp, the agreed facts admitted his tender, and the exclusion of the testimony of A. M. Hobby, that "at the time of executing the assignment to McMahan (of an interest in the firm of Stoddart & Burk, to secure McMahan against loss) by Robert Stapp, A. M. Hobby was acting as the mutual friend and agent of T. H. McMahan and Robert Stapp. That at the time of receiving the assignment from Robert Stapp, to carry to T. H. McMahan, he asked Stapp what was the interest in the firm of Stoddart & Burk, and that in reply Stapp explained to him it was an indebtedness of $15,000, due by Stoddart & Burk to him."

Exceptions having been reserved to the exclusion of the testimony of these witnesses, the rulings thereupon are also assigned as error.

By the agreed facts, it was also admitted that the lots mentioned in Mrs. Stapp's intervention, are the homestead of defendant Stapp and his wife, and of less value than two thousand dollars.

The court below rendered judgment in favor of McMahan against Stoddart and Stapp, for the amount of the notes and interest, and awarded an order for the sale of all of the lots attached. The defendants, and Mrs. Stapp, moved for a new trial, assigning the same causes relied on as error; and also that the judgment was contrary to the law and the evidence. The new trial was not granted.

After the rendition of the judgment, the plaintiff entered a release of his attachment upon the lots claimed to be the homestead, and this was made an order of the court below.

*Flournoy & Sherwood,* and *J. Z. H. Scott,* for the plaintiffs in error, after comment upon the pleadings and other preliminary matters, discussed the case as follows:

2. As to the rulings of the court below on the motions to quash the proceedings in attachment: The remedy by attachment is a creature of statute; and as the operation of these statutes is harsh and in derogation of the common law, proceedings had under them must follow the law *strictly,* otherwise they have no source of validity and must fall. No favorable construction of the law beyond its plain import, and no favorable intendment of facts beyond what is plainly, unequivocally shown, is ever made by the courts administering this and like summary remedies. (2 Texas R., 239; 1 Texas R., 17.) In several of the States, including Texas and Iowa, it has been held that the jurisdiction conferred by statutes of this sort is special and limited, and the courts exercising it, though in other respects courts of general jurisdiction are in this regard like all courts of special powers; that the facts upon which their jurisdiction depends, must appear affirmatively by way of averment upon the face of the proceedings themselves, otherwise the court has no authority in the matter, and its orders no validity. (Smith's Leading Cases, Vol. 1, 816, and cases cited; Drake on Attachments, § 208; 3 G. Greene's (Iowa) Reports, 387; and 23 Texas, 88, which reviews the whole doctrine as related to attachments, and adopts the reasoning of the court in 3 G. Greene, 387.)

In the case last cited this court decided that an essential fact, to confer jurisdiction on any court, under the attachment laws of Texas, is that the property seized shall belong to the defendant, and that, as above shown, this must be stated by the sheriff in his return, for it is

18—xxxv

only by that that the court can legally know the fact; and especially is this necessary in cases where real estate is attached; for if the property be sold under the proceeding, the Sheriff's return on the original writ of attachment constitutes a material link in the purchaser's chain of title. We submit, then, that if the sheriff's return in this case does not state unequivocally, and in terms, either that the property seized is the property of the defendants, or of some one or more of them, or that he attaches it as such, it is materially defective, and under the decision in Meuley against Zeigler (last referred to), it must be quashed.

The law governing writs and the returns of officers grows out of the nature of the process and its requirements. A writ directed to a proper officer is his authority to do its commands; so far, and no further, can he act officially. When he departs from the special directions of the writ, he is acting without authority of law; and particularly is this the case in process by which the court acquires jurisdiction. His acts, as a minister of the court in executing its process, are to all intents the acts of the court, and his report of those acts, when returned into Court along with the writ commanding him, forms a part of the record, and as such is taken (to the same extent as other records) to be absolutely true. But for him to return any other matter or facts than those which the terms of the writ require is superfluous, and cannot be received as an official return, and so forms no part of the record. It is no more than the certificate of a private citizen, which is hearsay and inadmissible anywhere in evidence. Staples, C. J., in 3 Rhode Island, page 86, thus lays down the rule succinctly: "The facts essential to a return are taken as conclusively proved if stated in it, except in those cases where express provision to the

contrary is made by statute, and except in suits against the officer making it for a false return. The return of the officer is the only proper evidence to prove those facts. If other facts are contained in the return they are to be rejected. The officer's return is no proper evidence of their truth." All the authorities go to establish and reiterate this rule. (Phillips on Evidence, 4th American, from 10th London edition, Vol. 2, pages 252 to 261, 367 and 368, notes 324 and 382; 5 Monroe, Ky., 126; 4 Bibb, Ky., 311; 11 Foster, New Hampshire, 18.)

The writ of attachment in the case now before the court requires the sheriff to attach the property of the defendants. This court has held that an essential part of a valid return is a statement by the sheriff that the property seized is the property of the defendant, or that he attaches it as such. (*Supra.*) Nowhere is the sheriff required by the writ to apply to the plaintiff or to any one for information; nowhere in the writ is the plaintiff or any one required to furnish it. So much of the return as relates to the pointing out of property by the plaintiff's attorney as the property of a defendant is irresponsive to the writ, and must not be considered part of the record. Yet this cannot be rejected without rejecting the whole clause, or changing the meaning of the sheriff; if the whole clause is rejected, there is nothing left (not even the vague hint at property in the defendant) by which the court can know its jurisdiction.

Granting that the plaintiff's attorney spoke the truth, and the sheriff believed him, which is not stated in the return (and the inference is otherwise, for the sheriff would then have been satisfied of the fact of ownership, and stated it plainly as a fact), the return is bad as being argumentative. (See 20 Texas, 131, for the rule

of courts concerning inferences in favor of returns;
1 Price, P. C., 8; Harrison's Digest, 6100, title Re-
turn.)

Suppose that a sheriff returns a writ of citation,
"Executed by delivering a certified copy of the plain-
tiff's petition and a copy of the within writ to a man
pointed out to me by the plaintiff's attorney as the
within named defendant." Would the court proceed
to judgment with so many possible questions open as
to its jurisdiction? The two cases are precisely similar.

In Irons v. Allen (Hardin's Ky. Reports), the sheriff
returned, "Levied on one handkerchief shown me as
the property of the defendant." The court held this to
be no averment on the part of the sheriff that the hand-
kerchief belonged to the defendant, and quashed the re-
turn. (Mason, etc. v. Anderson, 3 Monroe, Ky., 293.)
It is the practice (and a proper one) for the sheriff to
consult the parties to process that comes to his hands
for execution, but he is to determine if their sugges-
tions are to be followed; and whether he follows them
or not, these suggestions form no part of his return. It
is his word as to the facts, and not his statement of the
opinion of others, upon which the court is to act. In
an analogous case the Supreme Court of Tennessee says,
"The objection to this judgment is, that it recites a part
of the facts necessary to give jurisdiction as coming from
an officer not designated by law to communicate them,
and consequently such communication gave no author-
ity to the court to recognize them as existing, and to
pronounce judgment upon the assumption of their ex-
istence." (3 Yerger, 362.)

The same language may be used, *mutatis mutandis*,
as to the return of the sheriff in the case before the
court. The plaintiff's attorney is not authorized to in-
form the court in this matter; and if he were competent

for this purpose, it would be as a witness in the case,
under oath.  If the law authorized the sheriff to levy
upon property pointed out by the plaintiff's attorney,
this return would be good; but there is no law to jus-
tify him in so doing.  In the case of Sheldon v. Com-
stock (above referred to), 3 Rhode Island, 86, the Chief
Justice continues: "In the present case the law required
the officer making the attachment, immediately after
making it, 'to leave an attested copy of the writ, with
a copy of his doings thereon, at the defendant's usual
place of abode.'  The return, as originally made, con-
tains no averment of this fact, and as proposed to be
amended, it is equally faulty; no copy was left where
the law required one should be left.  The return, as
amended, will state that the officer did leave a copy,
'by directions of the defendant, with the defendant's
attorney, Paul Todd, in whose hands defendant stated
his affairs to be placed.'  No law required the officer to
do this; it was no part of his duty.  The facts set forth
form no essential part of his return; they are not,
therefore, proved by the return.  The facts, therefore,
do not exist, but if they existed, would not constitute a
sufficient return to the writ."  (The rest of this opinion
is still further in the same direction, and would be
quoted at length, but that it is too long for inser-
tion.  We refer to it, however, as bearing us fully out
in the position taken.)  Hence, we conclude that, first,
the clause objected to in the return in the case before
the court, being no part of a necessary return, is not
evidence to the court that the plaintiff's attorney pointed
out any property as the property of the defendant;
second, that if the court were advised conclusively by
legal evidence that he had so pointed out property, it
would not help the matter, for his pointing out prop-
erty does not authorize a levy.

3. As to the exclusion by the court below of the testimony tendered, as shown in the bill of exceptions.

This testimony was tendered in rebuttal of the evidence adduced to prove that Stapp was a partner in the firm of Stoddart & Burk. It is to be observed here, and throughout the whole of this connection, that Stapp is sought to be charged as a dormant partner. His liability depends upon the fact of membership in the concern, and he is entitled to disprove that fact as he would any other fact, either by attacking and explaining the evidence brought in to prove it, or by arraying against it counter-evidence sufficient to outweigh the first. It would be otherwise if he was sought to be charged with a debt of Stoddart & Burk, which was contracted on the faith of his having represented himself as a partner, either by having his name appear in the firm name and style, or by having represented in his private conversation and conduct that he was a member of the firm. He would then be estopped from denying the truth of those representations, and would be restricted to proving they had not been made. No attempt was made by the plaintiff below to prove that he had been induced to extend the credit by being led to believe Stapp was a partner. He did not show that he knew of the existence of any of the evidence used by him on trial until two or three months after the debt was contracted, out of which this action grew. "Estoppels must be certain to every intent; for no one shall be denied setting up the truth, unless it is in plain and clear contradiction to his former allegations and acts." (1 Greenl. Ev., § 22.) Estoppels only operate, when they have been acted upon, in favor of the person who has so acted, and in respect of the matter in which he has been misled. (Phillips on Evidence, 4th American, from 10th London edition, Vol. 1, note 129,

page 460; Greenl. E., Vol. 1, § 208.) Estoppels only operate in actions on the instrument. (8 Mason & Welsby's Rep., 213.)

In explanation of the assignment by Stapp to Mc-Mahan of his interest in the partnership assets of the firm of Stoddart & Burk, evidence was offered to show that Hobby was, at the time and in the matter of this assignment, acting as the mutual friend and agent of Stapp and McMahan; that when the assignment was delivered to him to carry to McMahan, he asked Stapp particularly about the nature of the interest assigned, and was told that Stoddart & Burk owed him, Stapp, a large sum of money ($15,000), and that this was the matter pledged in the assignment. As the mutual agent of the parties, Hobby represented each in his conversations with the other. Things which came to his knowledge, in the matter of his agency, are chargeable upon the knowledge of both McMahan and Stapp, and Stapp's explanation to Hobby was to all intents and purposes the same as if made to McMahan in person. (1 Parsons on Contracts, 64; Story on Agency, §§ 140, 451; Story on Contracts, § 136; Adams' Equity, marginal page 157, note.)

Parol testimony is always admissible to show what the intention and understanding was in the execution of a written instrument itself. (1 Story, C. C. Rep., 574; 1 Greenl. Ev., §§ 277, 279, 282; 1 Texas, 373; 8 Texas, 135; 20 Texas, 315.) Here it was not intended to vary or contradict the assignment by showing that he had no interest, nor that it was not assigned, but merely to show what that interest was understood to be; though, as we have shown above, owing to the manner in which this instrument comes before the court, we would not be estopped from proving every word of it false for the purposes of this action. If suit

were brought on the instrument itself, then we could go no further than we really proposed to go, by showing the meaning attached by the parties to a particular word, capable of more than one meaning. The conversation between Hobby and Stapp was part of the *res gestœ*, and so peculiarly appropriate for the purpose. (1 Story, C. C. Rep., 574.)

In explanation of the evidence adduced to show that articles of copartnership had been drawn and signed by Stapp and the firm of Stoddart & Burk, the defendants below offered to show that, though so drawn and signed, they were abandoned, and the partnership was never in operation. The existence of articles of copartnership is certainly presumptive evidence of a partnership between the persons signing it, because the two generally go together, but articles do not constitute, but merely regulate, the contract of partnership, which depends entirely upon other acts of the parties for its existence.

[Since writing the above, our attention has been called to 1 Wharton, Pa. Rep., 381, where a case, about similar in this respect to the one under consideration, was determined in favor of the position taken here—the existence of partnership articles being held *prima facie* evidence of partnership against a partner whose name did not appear in the firm; but this presumption was dispelled by proof that nothing was done under the articles.]

In every case to which we have been able to refer, where articles of copartnership have been relied on to prove the fact of copartnership, there was either no contest as to the fact of the articles of agreement being in operation, or there was proof *aliunde* that the parties were engaged in the business contemplated by the articles. (6 Conn., 347; 1 Caine's N. Y., 184; 12 Ala.,

783; 1 Wharton Pa. Rep., 387.) The agreement is in its very nature as ambulatory as a will; for they may be varied, controlled and abandoned, without affecting the fact of copartnership; and the termination of the partnership must necessarily annul the articles, except for the purpose of settling business between the partners that was transacted under them. (Story on Partnership, § 192.) Such an agreement is not like a deed of conveyance, for the mere delivery of a deed of conveyance vests the title irrevocably except by a deed of like nature. Partners are in law one and the same person, so that no technical delivery can be had; but even a deed may be delivered to take effect upon a parol condition, not shown or referred to in the deed, and oral testimony is admissible to show both the condition and its breach. (4 Cranch, S. C. Rep., 219; 4 Cranch, Circuit Court Reports, 215—directly in point; 6 Texas, 489; 10 Texas, 159.) Thomas's testimony was tendered to show the condition upon which the articles were to take effect and also to show the breach of that condition. The case has only to be supposed in the abstract to show the fallacy. Let A and B execute articles of agreement, by which they consent to do a partnership business for the period of one year; A to be a dormant partner, the business being carried on in B's individual name. Let us even suppose that they go into the proposed business as contemplated in the articles (and this is going beyond what is necessary for our case), and after three months A becomes dissatisfied and has a final settlement of the partnership affairs, and withdraws from the concern with B's consent. B continues the business, becomes involved in new debts contracted after A's withdrawal, but before the time mentioned in the articles as that during which the partnership was to last. His creditors then learn, for the

first time, that A was once a partner in the establish-
ment, and the contents of the articles between him and.
B. Will it, for a moment, be contended that the arti-
cles, dead for every other purpose, will be kept alive
for their benefit, and that A would be precluded from
showing the truth ? The very essence of a partnership
is participation in the profits. A could not enjoy this
privilege, for B. could show the settlement against him ;.
he cannot, then, be held liable as being an interested
partner.

We submit, then, that all the evidence tendered and.
excluded, as shown in the bill of exceptions, was com-
petent, and would have probably changed the result.
In such cases the invariable rule is to grant a new trial.
(Graham and Waterman on New Trials, Vol. 1, 251
*et. seq.;* Vol. 2, 665 *et seq.*)

4. The judgment of the court below (being in fact.
both judgment and verdict) is contrary to the evidence.

If the assignment by Stapp to McMahan, dated Feb-
ruary 1, 1868, above referred to as used in evidence, is.
of an interest as partner in the firm of Stoddart & Burk,
it is conclusive evidence against the party using it, as
having notice of its contents from its date, that the
partnership was dissolved from that time ; and after
dissolution no partner can bind his copartner by any
new contract, nor by varying the form of those already
existing. The notes sued on bear date after the assign-
ment of February 1, 1868. The consideration on which
they were based accrued before that time. (24 Texas,
639 ; 3 Kent's Comm., page 63, fifth edition, and author-
ities cited.) For any assignment by a partner of his
interest in the concern, even by way of collateral secu-
rity, *ipso facto*, works a dissolution. (3 Kent's Comm.,
53, fifth edition ; Story on Partnerships, § 307 ; Parsons.
on Contracts, Vol. 1, 172 ; 17 Johnson's Chancery,.

N. Y., Reports, 525—this case is an instance of assignment as collateral security, and is adopted by all the text books as expounding the law ; 2 Dev. Equ. Rep., 481.)

Supposing, then, that Stapp was a partner, the assignment subrogated McMahan to all his rights as such, i. e. an interest in the residue of the assets after discharging all the liabilities of the concern, including the consideration of the notes sued on—and McMahan cannot enforce this demand against Stapp, personally, without first exhausting the security inseparably connected with it.   He proves himself out of court, first, by showing the notes sued on to have been executed after dissolution of the supposed partnership ; secondly, by showing that he has acquired an interest in a fund, the ascertainment of which necessarily involved a discharge of the original debt upon which the notes are based.

These views are advanced under the hypothesis that the partnership alleged was proven to exist, and merely to call attention to the anomalous condition of the pleadings and evidence of the plaintiff below.   There is not that conformity between "the pleadings and the nature of the case as proved," that is required to render a proper judgment.   (Pasch. Dig., Art. 1476.)

*Ballinger, Jack & Mott,* for the defendant in error, discussed the questions arising upon the evidence, and then proceeded to consider at length the leading features ; and so much of their argument is here presented as space will allow :

The levy of the attachment was good and sufficient.

The cases in which the rigorous rule of construction originated, which is sought to be applied to the proceedings in this case, were cases in which an attachment

of the property of a defendant, not found or served with personal process, was the foundation of the jurisdiction of the court for a judgment against the defendant. At the common law, if a defendant could not be found, they proceeded to outlawry against him, and thus reached his property. Subsequently, by statute, after two returns of not found, judgment could be rendered. In Virginia, Kentucky and Missouri, when a defendant was not found, an attachment issued against his property, and being levied on his property, operated as notice of the suit and compelled appearance; otherwise judgment was rendered against him *in personam* by default for the debt claimed, and not merely against the property attached. Thus in Clay v. Neilson, 5 Rand., 596, a capias being returned not found, an attachment issued, but did not specify the names of the defendants, and was returned "levied on an ox cart," and judgment entered. The court say:

"An attachment is resorted to for the purpose of forcing an appearance. It is intended to supply the place of a capias executed. It ought, therefore, to be levied on some property belonging to each defendant, otherwise there will be nothing to inform him of the existence of the suit, and a judgment would thus be obtained by surprise."

In Irons v. Allen, Hardin's Ky. R., 44, a capias having been returned "not found," an attachment issued and was returned, "levied on one handkerchief, shown me as the property of the defendant," on which a final judgment was rendered by default. The court say, "the return was not sufficient to authorize a judgment;" "the defendant cannot, by any legal intendment, be presumed to be either in default or in court."

Same principle, 3 Monroe, 293; 8 Dana, 67; and in Anderson v. Scott, 2 Missouri R., 15. In this class of

cases it is apparent that a levy on property of the defendant must be shown, without which jurisdiction over his person could not attach. The principles drawn from this source were applied in Tiffany v. Oliver, 3 G. Greene, Iowa R., 387, to a case in which the court had jurisdiction of the defendant by service of process, and by his appearance and defense of the suit ; and the attachment was only an auxiliary process. This case has, to a certain extent, been followed by this court in 23 Texas. But with the clearest conviction that it was wrongly decided, and will lead to the most mischievous consequences, we respectfully ask this court to renew its consideration of the Iowa case. That court say :

"The attachment being in derogation of common law, and of a violent character, it should affirmatively appear by the officer's return, that the provision of the statute had been strictly observed, as the jurisdiction of the court over the property depends entirely upon a legal levy. It is by virtue of the levy authorized by statute that the court proceeds to render judgment of condemnation against the property. If the levy is defective, the court, acting as a court of limited jurisdiction, under a special and stringent statute, has no power to proceed against the land. In proceedings in attachment, the jurisdiction of the court is obtained by special authority derived from the Legislature, and hence the doctrine of presumption, as applicable to courts in the exercise of common law powers, cannot apply. * * * This first step (the levy) necessary to confer power upon the court to charge the land, must be correctly taken, or all subsequent proceedings under the attachment will be *coram non judice,* and void."

We submit, that the dissenting opinion of Judge Greene is much more sound and reasonable, and should be more acceptable to this court. He denies that the

"return" of the sheriff is the foundation of the juris-
diction of the court; or that the court, as respects
attachments, is one of limited and special jurisdiction;
or that it is a violent and stringent remedy, to be de-
feated, if not literally followed; but on the contrary, is
a mere auxiliary proceeding, conferred on a court
already of general jurisdiction, intended to protect cred-
itors against fraudulent and dishonest practices, and
should receive such legitimate consideration from the
courts as would best secure the objects for which it was
enacted.    This is illustrated by a force of reasoning and
a weight of authority which we think are entirely con-
clusive.

Our best attention has been given to these and the
still later authorities.   So far as we have been able to
find, the case in Iowa stands alone.   Its doctrines ap-
pear to us unfounded, calculated to defeat a most use-
ful remedy, which the experience of this and all other
States is daily extending, and to endanger the security
of titles by verbal and technical niceties upon collateral
issues against the judgment of our courts of general
jurisdiction.

Johnson v. Moss, 20 Wend., 147:   "It is said that it
does not appear that the levy was on the defendant's
property.   The attachment required the officer to take
the defendant's property, and the constable returns, that
by virtue of the attachment he has levied on a table,
etc.   The fair and reasonable intendment is, that the
property taken belonged to the defendant.   The return
was, I think, sufficient."  .

Bickerstaff v. Patterson, 8 Porter's Ala., 246:   "The
sheriff is an officer placed under great responsibility by
the law which defines his duties.   He pledges to the
public, under the solemnity of an oath, his integrity
and diligence; and consequently every reasonable in-

tendment must be made in favor of the regularity of his official acts. When he receives process requiring him to levy upon the property of a particular individual, and he returns it according to its mandate, with his indorsement, stating that he had levied the same on property, particularly describing it, we must intend that the property seized belonged to the defendant ; because the process only authorized a levy upon his effects.''

Redus v. Wofford, 4 Smedes & M., 579. Attachment returned, ''Come to hand twenty-first of May; levied on one house, and lots number two, three, etc. (describing the property), all in the above township and range. Wm. Henderson, sheriff, by his deputy, Wm. West.'' The court say: ''It shows a levy on land by a sworn officer, which must be presumed to have been done correctly.''

Paine v. Moreland, 15 Ohio, 435. Attachment against Nichols. Return—attached the following described property (describing the land), but not stating whose property it was. A judgment was rendered without any further publication of notice to the defendant, as required by the statute. The land was sold, and the controversy arose between a purchaser from Nichols prior to the attachment, whose deed was not recorded, and the attachment purchaser. The court sustain the title of the attachment purchaser. They say, ''What gives the court jurisdiction in a proceeding in attachment? The filing the proper affidavit, issuing the writ, and attaching the property. The moment the writ goes into the hands of the officer, he is authorized and required to seize the property. When this is done, the property is taken out of the possession of the debtor into the custody of the law.'' And although in this case the court proceeded to render a general judgment, *in personam*, against the defendant, without publication

of notice, as required by the statute, which the court admitted was void; and although the sale took place under a general execution on the judgment, and not under an order of sale under the attachment; yet it was held that the court, having power to render judgment, as respects the attached property, and having in fact only sold the attached property, the sale gave the best title.

Chambers v. Kelly, 12 Missouri, 516. Suit for a horse, "Sir Kirkland," both parties claiming under Longnecker; the plaintiff by purchase at private sale; the defendant by purchase under attachment. The sheriff's return to the attachment did not show a levy on the horse as the property of Longnecker, and instruction was asked that the sale under this levy was insufficient to divest the title of Longnecker, and vest the same in Kelly. The court say: "Informality of the sheriff's return cannot affect the right of the purchaser of the property attached and sold under the order of the judge in vacation. It is not competent for third persons to come in and object in this oblique manner to imperfections and inconsistencies in a sheriff's return."

Bucklin v. Crampton, 20 Vermont, 203. "The property attached was described in the officer's return as 'thirty tons of hay in the barn on the premises,' without the addition of the words 'occupied by the defendant,' which are found in the copies. Now, in the absence of any other description, we think it must and would be understood that the premises were in the occupancy of the debtor. Property attached is presumed to be in the possession of the debtor, unless it be otherwise described. * * * No one could imagine that the officer designed to attach hay in the possession of others, unless he had so described it. * * * Reasonable certainty is all that can be required."

The different light in which the return to an attachment, which is an auxiliary process to enforce a debt, will be construed, is shown in a recent Kentucky case, Anderson v. Sutton, 2 Duval, 485-6. The statute required the sheriff levying the attachment on real estate to leave a copy with the occupant, or, if there was no occupant, to post up copies in a conspicuous place on such estate. Objection being taken that the sheriff's return did not show this had been done, the court say:

"Nothing appearing to the contrary, the law presumes he performed his duty, and complied with the requirements of the law; and his return must, therefore, be regarded as sufficient in the absence of countervailing evidence."

The same decision was made in Ritter v. Scannel, (11 California R., 238.) The Chief Justice says:

" Our statute prescribes the manner in which real estate may be attached, but contains no express provisions requiring that all the acts necessary to a valid levy shall be set out in the return. * * The general rule with regard to the execution of mesne process is, that all presumptions are in favor of the regularity of the acts of the officer, and that a return which simply states that the process was executed, is sufficient, *prima facie*, to show a due and proper execution."

The court held that evidence *aliunde* the return could be received to prove an attachment.

Meuley v. Zeigler, 23 T., 88, was the case of the levy of attachment in the suit of Meuley v. Kœnig, returned as levied on lot 5, in block 12, judgment rendered and an order of sale of the property. Subsequent to the levy, Zeigler bought the lot from Kœnig without actual notice of the attachment, and obtained an injunction against the sale under the attachment. The court decided that this return did not create a lien as against a

19—xxxv

subsequent *bona fide* purchaser, because it did not suf-
ficiently identify the property, by showing its location ;
and also because it did not purport to be levied on as
the property of the defendant. The court, we think,
very carefully confines itself to the precise case, viz., of
lien and notice, so as to affect subsequent innocent par-
ties ; and plainly implies that, as between the parties
themselves the return was sufficient ; also, that, as be-
tween the parties any other evidence to satisfy the court
that the property was the defendant's would authorize
a sale.    This authority is, therefore, entirely consistent
with the judgment of the court ordering the sale of the
property attached in this case, and does not require
further comment at our hands.   At the same time we
ask permission to say, that we have the most perfect
conviction that the case in 23 Texas accorded a weight
to the decision in 3 G. Greene's Iowa Reports to which
it is not entitled, is adverse to sound reason and au-
thority, and, if adhered to, will have a most pernicious
effect, in subjecting titles to property under attach-
ment sales to be avoided by " oblique " and collateral
attacks at any distance of time.

It is said that attachment laws are in derogation of
the common law, yet they had their origin in the imme-
morial custom of London.   And are they any more in
derogation of the common law than the levy of execu-
tion upon lands ?   We should be glad to be informed
wherein the jurisdiction of a district court, in Texas, to
sell lands under execution, is other than that under
attachment.    The former was unknown at the common
law.   Both are conferred by statute.   The difference
simply is in the state of facts which authorize them.
The idea of derogation from the common law, however,
in either case serves only as a delusion, and, in the in-
terests of justice, ought to be suppressed.

At the common law, in an action such as the one in the court below, a *capias* issued against the defendant's person, and he would have been imprisoned unless he had given bail.  On recovery of judgment, he would have spent his days in prison unless he paid the debt. And yet, when our laws against debtors of the fraudulent class—parties who, under the sanction of an oath, and under the liability of bond and security, are alleged to "have transferred their property for the purpose of defrauding their creditors," and that, without the attachment, "the plaintiffs would probably lose their debt"—we are met with rigorous and unreasonable construction of the acts of officers of the State, because attachments are violent and stringent proceedings, derogating from the common law rights of the debtor class.

We think that arguments of this kind have had their day, and spent their force; and that the attachment law, like all other remedies regulated by statute, whilst its construction should, as against parties themselves, properly be strict, will yet be upheld when its terms are substantially complied with, and that acts of officers in its execution will receive that reasonable intendment which is at once logical in itself, and necessary to the administration of justice.

The law, after the necessary proceedings by the plaintiff, provides for the issuance of an attachment, which, by its terms, commands the sheriff to attach the property of the defendants. (Paschal's Digest, Art. 163.)

It provides "that attachments may be levied on defendant's property, and the manner of executing an attachment on personal property shall be by the officer going to the house in which, or to the person in whose possession the property of the defendant is supposed to be, and then and there declaring in the presence of

one or more credible persons of the neighborhood that he attaches said property." (Pas. Dig. Art. 149.)

Nowhere is any form prescribed for the sheriff's return. Their general duty is to indorse on all process "the manner in which they executed them." (Pas. Dig. Art. 5121.) We think that the act, as to personal property (requiring greater particularity), prescribes specially "the manner" of the levy, viz., by declaring before one or more witnesses that he "attaches the property." This is the spirit, as it is the full letter, of the statute. Why say more? Why shall the sheriff say, in *hæc verba*, that it is "the property of the defendant?" With all respect, but to express our judgment frankly, this seems the veriest quibble for a useless form of words. The suit is between plaintiff and defendant. The process is to attach the defendant's property. He has no power to attach the property of any one else. He has no motive to do it, but every motive to the contrary. He returns a levy on property. Where is the reason or propriety for other than the plain, obvious, natural, sensible construction, which would always apply to a response to such a special mandate, especially by a sworn official, that the property attached was the property of the defendant? Why confuse one's self with the unreasonable possibility that it may be the property of some other person? Or, still more pertinently, and to the very truth of the case, why should the sheriff declare whose property it is? Where an attachment of his property is a constructive notice of the suit to the defendant himself, we recognize a substantial reason why the sheriff should return that he had attached the defendant's property. We can see that a motive might exist to get service on him, although he might in fact have no property subject to attachment; and we can see the wrong and injury which

would thus result.   But an attachment, as in this case, an auxiliary process to enforce a debt, has its analogy, not to a process to acquire jurisdiction of the person, but to an execution to collect a debt.

OGDEN, J.—The statute of our State having pre- scribed a form for a writ of attachment, we are not in- clined to the opinion that any other form can be de- manded, nor do we think that a party has the right to insist that the attachment shall be any more specific or descriptive than required by the statutory form.   The writ in this cause is almost a literal copy from the statute, with the addition of filling the blanks, and the court did not err in overruling the motion to quash the same.   Nor did the court err in overruling the motion to quash the levy of the attachment, for the reasons set out in the original motion for that purpose ; and indeed the plaintiffs in error appear to have abandoned the original grounds for the motion as presented in the court below, and have argued in this court, to some length and with much force, another ground why the levy of the attachment should have been quashed in the lower court.   Counsel for appellee raised the question whether this court could consider any ques- tion, or objection to the proceedings in the lower court, not made in that court, nor presented by the assign- ment in this court.   But it may be answered, that if the objections be well taken, it would oust the jurisdiction of that court, and that the proceedings there could confer no jurisdiction upon this court.

The return of the sheriff, endorsed on the writ of attachment, was in part as follows : "Received this writ May 18th, 1869, and executed the same May 24th, 1869, by attaching lots number one and four, in block four hundred and ninety-eight.     *     *     *     The

aforesaid property was pointed out to me by plaintiff's attorney, as the property of Robert E. Stapp," etc. And the plaintiff in error now claims that the levy was without authority of law, and void, because the officer making the same did not certify or return that he had levied on the property of the defendant, and cites the cases of Tiffany v. Glover, 3 Iowa, 390, and Meuley v. Zeigler, 23 Texas, 92. The law regulating original attachments in this State was enacted for the accomplishment of two distinct and different objects and purposes, and authorizes the issuance of that writ under two different statements of facts. First, when the party against whom the writ is sought is absent from the State, or cannot be found, so that the ordinary process of citation cannot be served upon him; in which case an attachment may issue against the property of a defendant in order to force an appearance, either actual or constructive, in court, to answer the complaint or demand then preferred against him. Second, when suit has been brought against a party, and he has been notified of the same, by service of citation, but who is attempting to avoid the payment of a just demand by placing his property out of the reach of the law; in which case an attachment may issue, directing the seizure of that property, to be held for the satisfaction of such demand when established by a judgment of the court.

In the first case, the attachment is intended to supply the want of personal service of an ordinary citation, and the law directs that the writ shall be served upon the property of the defendant, which service shall operate as constructive notice to the defendant of the pendency of the suit. This certainly is a rigorous rule of construction, sanctioned only by the positive enactments of the Legislature, to which the doctrine of pre-

sumptions should not be applied, and therefore the law authorizing such an extraordinary proceeding, and every act of the officers in the execution of the same, should be most strictly construed and scrutinized. It follows, that when the officer levying an attachment, which was issued for the purpose of giving the court jurisdiction of the person and property of the defendant, has failed in any particular to comply with the law, the jurisdiction does not attach, and all subsequent acts must of necessity be void. It is by the levy and return of the sheriff that the jurisdiction of the court attaches, and therefore, if he should fail to attach the property of the defendant, or fail to make a return specifically that he had attached the property of the defendant, his acts would fail to give the court jurisdiction, and no presumption could be brought to bear to cure the defect or validate any action of the court by virtue of the levy. (Clay v. Nelson, 5 Randolph, 596; Irons v. Allen, Hardin's Ky. R., 44; Anderson v. Scott, 2 Mo. R., 15; Bradford v. Gillespie, 8 Dana, Ky. R., 67.)

In the case of Tiffany v. Glover, the court says: "It is only by the return that the court is advised of the levy, and special judgment and execution can only be awarded upon sufficient levy, and this must be ascertained by the officer's return." The doctrine as announced in that case is believed to be the law when applied to attachments issued for the purpose of giving the court jurisdiction; but we are unwilling to adopt the decision in that case, or the decision of our own court in Meuley v. Zeigler, if intended to apply to all cases of attachments, regardless of the purpose for which the same were sued out.

Whenever suit has been commenced against a party, and a regular summons or citation has been served

upon him, then he is, or is properly supposed to be, in court, to defend his interests and protect his property; and therefore any act of the court, or of any officer of the court, would be entitled to every presumption of fairness and legality; and when an attachment is sued out under such circumstances, for any of the causes specified in the statute, supported by the affidavit of the party applying for the same, the presumptions, if any, are changed in favor of the plaintiff, and against the defendant. In such a case the attachment is simply an auxiliary process to prevent a fraudulent disposition of the defendant's property, and to secure the payment of a just debt, and, as suggested by counsel, bears a strong analogy to an execution before judgment. And when issued as auxiliary to a suit pending, an attachment is no more rigorous in its effects than an execution after judgment, and should be subject to no more rigid or stringent rules. In the dissenting opinion of Justice Greene, in Tiffany v. Glover, he says: "The great object of the attachment law is to protect creditors against fraudulent and dishonest practices, too often resorted to by debtors.   *   *   *   It follows, then, that the law should receive such a legitimate consideration from the courts as would best secure the objects for which it was enacted."

In the cause at bar the attachment was sued out as a collateral, and not a direct proceeding to give jurisdiction to the court of the person and subject matter in controversy. And the plaintiff now seeks a reversal of the judgment, because of the defective return of the sheriff, in not stating definitely that the property attached was the property of the defendant. This question, among others, was raised in the case of Meuley v. Zeigler, but as it was not the controlling question in that case, it may be that the learned judge who deliv-

ered the opinion did not consider it necessary to give it that thorough investigation which usually characterized his able opinions. In that cause the court, in following the decision in Tiffany v. Glover, came to the conclusion that the return of the sheriff was too indefinite and uncertain to create a lien upon the property attached, as against a purchaser without actual notice of all the proceedings. We have carefully examined the decision of the court in 3 Iowa, and the dissenting opinion of Justice Greene in the same case, as well as the case of Rowan v. Lamb, in 4 Iowa, 468, directly overruling the decision in Tiffany v. Glover, and we are forced to the conclusion that the doctrine as laid down in Tiffany v. Glover, and Meuley v. Zeigler, when applied to an attachment issued as an auxiliary process in a suit where the jurisdiction had attached, cannot be sustained by reason or authority.

In the case at bar, the defendant was in court by virtue of the service of an ordinary citation, and the attachment was issued as an auxiliary writ, to prevent the fraudulent disposition of property. The defendant does not deny the right of the plaintiff to the writ. If, therefore, the attachment was served upon his property, he has no right to complain, whether a return was made by the officer or not. But if the officer, in violation of the direct command of the writ, has levied on property not the defendant's, he is responsible to the owner of the property, and the defendant will not be injured thereby. The law provides that the attachment shall be levied on the property of the defendant, but it gives the sheriff no judicial power to determine the question of ownership, and when the property is levied upon, the law gives the party claiming the same a specific proceeding for the trial of the right of property, in which the return of the sheriff has no peculiar signifi-

cance. From these and other considerations, the gene-
ral rule in regard to the execution and return of
attachments as an auxiliary process is, that all pre-
sumptions are in favor of the regularity of the acts of
the officer. (Paine v. Mooreland, 15 Ohio, 435; Redus
v. Wofford, 4 Smedes & Marshall's R., 579; Ritter v.
Scannel, 11 Cal. R., 238; Rowan v. Lamb, 4 Iowa, 408;
Morgan v. Johnson, 15 Texas, 568; Mesner v. Hutchins,
20 Texas, 597; and Hill v. Cunningham, 25 Texas, 25.)

But it is contended with much reason, that as the
statute prescribes no particular form for the return of
the sheriff, and as the writ commands him to attach the
property of the defendant, therefore a return that he
had executed the writ by levying upon certain prop-
erty, the inevitable conclusion would be, that the officer
intended to return that he had attached the property of
defendant. (Johnson v. Moss, 20 Wend., 147.) We
are therefore of the opinion that the return of the
sheriff in this case was sufficient to hold the property
levied upon, and that the court did not err in overrul-
ing the motion to quash the levy and return.

The force of the exception to the ruling of the court
in relation to the testimony of Hobby is not perceived,
since what the defendant might have said to a third
person after the assignment was made could not be
legitimate testimony to affect that assignment; and even
if the testimony had been admitted, and had been true,
it would have changed the assignment, if at all, only
to limit his interest in the firm of Stoddart & Burk to
$15,000. The testimony of Thomas was also correctly
ruled out by the court. The execution of the partner-
ship articles, and the recognition of a subsisting part-
nership long after the execution of the articles had
been proven, and the defendant Stapp's assignment of
his interest in the firm, one year after the partnership

articles had been executed, had established the fact of a subsisting partnership, and the proof, without time or place, of a single assertion of two of the partners that the scheme should be or was abandoned, could not have changed the facts already proven. The conversation might have been intended to deceive the public or some individual, but was inadmissible to disprove the clear admissions of the party, made in a solemn act of assignment.

The question of the effect of the assignment of Stapp to McMahan was not raised in the court below, nor any rulings of the lower court in relation thereto complained of in the assignment of errors, here, as errors, and therefore need not be further noticed here.

The rulings of the court in relation to the intervention of Lydia J. Stapp were erroneous; she had a right to intervene for the protection of her homestead, and the court erred in sustaining plaintiff's demurrer to her plea of intervention. The *remititur* afterwards entered, and the judgment of the court decreeing to her the homestead to the full extent claimed, cured that error as to the homestead, and the judgment of the lower court will not be disturbed in that respect. But this court is not unanimous in opinion as to what should be the proper order of this court in relation to the intervenor's claim for damages. In my opinion, the judgment of the district court should be affirmed in all things, and leave the intervenor to prosecute an independent suit for damages, as she certainly would have a right so to do, provided she thought proper. But as a majority of the court think she should have been heard on her plea of intervention for damages in this case, the judgment of the lower court in that respect will therefore be reversed, and the cause remanded; but in all other respects be affirmed.

ORDERED ACCORDINGLY.